UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

                             Case No. 10-20397
                             Hon. Gerald E. Rosen

D-4 TEVIN BIVINS,

       Defendant.
_____/

**OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO VACATE GUILTY PLEAS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____April 30, 2014_____

PRESENT:  Honorable Gerald E. Rosen
                    Chief Judge, United States District Court

## I. INTRODUCTION

Defendant Tevin Bivins is named along with five co-defendants in an August 10, 2010 first superseding indictment, and is charged in nine of the ten counts of this indictment with (i) four counts of interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a), (ii) four counts of using or carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A), and (iii) a single count of assaulting, resisting, or impeding a federal officer, in violation of 18 U.S.C. § 111.  At a March 30, 2011 hearing, Defendant pled guilty to all nine of these charges, and the Court accepted this guilty plea and took Defendant's plea agreement under advisement.

Since the March 30, 2011 hearing, Defendant has attempted on four occasions to withdraw all or a portion of his guilty plea. The first two such efforts rested upon Defendant's *pro se* submissions to the Court in November of 2011 and October of 2012, in which Defendant claimed that he acted under duress when he pled guilty and was misled or coerced by his counsel into entering this plea. The Court denied these two *pro se* requests at hearings held on December 19, 2011 and October 23, 2012, finding that Defendant's claims of coercion or duress were contradicted by his statements in response to the Court's inquiries at the March 30, 2011 plea hearing.

Following two changes in counsel, Defendant filed a June 12, 2013 motion through his present counsel, seeking for a third time to withdraw his guilty plea. The Court denied this motion at the conclusion of an August 6, 2013 hearing, finding that Defendant had failed to show the requisite "fair and just reason" under Fed. R. Crim. P. 11(d)(2)(B) for withdrawal of his guilty plea.

Through the present motion filed on March 21, 2014, Defendant once again seeks to vacate a portion of his guilty plea — specifically, his pleas as to the four § 924(c) offenses charged in counts 2, 6, 8, and 10 of the first superseding indictment. In support of this latest effort, Defendant reasserts one of the issues identified in his prior motion to withdraw his guilty plea: namely, the possible implications of the Supreme Court's grant of certiorari in the case of *United States v. Rosemond,* 695 F.3d 1151 (10th Cir. 2012), *cert. granted,* 133 S. Ct. 2734 (2013). The Supreme Court has now ruled in this case, *see*

*United States v. Rosemond,* 134 S. Ct. 1240 (2014), and Defendant maintains that in light of this ruling, there is no longer a factual basis for his guilty pleas to the four § 924(c) offenses charged in the indictment.

On April 23, 2014, the Court held a hearing on Defendant's latest challenge to his guilty plea. For the reasons stated at the April 23 hearing, as reiterated in greater detail below, the Court denies Defendant's motion to vacate his pleas of guilty to counts 2, 6, 8, and 10 of the first superseding indictment.

## II. ANALYSIS

### A. The Supreme Court's Ruling in *Rosemond*

In *Rosemond,* the Supreme Court addressed the issue of "what the Government must show when it accuses a defendant of aiding and abetting" a § 924(c) offense. *Rosemond,* 134 S. Ct. at 1243. Under the law of some circuits — including the Tenth Circuit in the case before the Supreme Court, *see Rosemond,* 695 F.3d at 1154-56, as well as the Sixth Circuit, *see United States v. Gardner,* 488 F.3d 700, 712 (6th Cir. 2007) — it was sufficient prior to *Rosemond* to show that the defendant "knew one of his accomplices possessed a gun in furtherance of a drug trafficking offense [or crime of violence] and that [the defendant] acted with the intent to assist in or influence the commission of the underlying drug trafficking crime [or crime of violence]." *Gardner,* 488 F.3d at 712. In other circuits, however, the Government was required to show in addition "that the defendant took some action to facilitate or encourage his cohort's use

of the firearm." *Rosemond,* 695 F.3d at 1155 (acknowledging this circuit split but adhering to Tenth Circuit precedent that did not demand this showing). The Supreme Court granted certiorari in *Rosemond* to resolve this circuit split.

In addressing the theory of aiding and abetting a § 924(c) offense, the Supreme Court first observed that § 924(c) defines a "double-barreled crime," in that the Government "must show the use or carriage of a gun" plus "the commission of a predicate (violent or drug trafficking) offense." *Rosemond,* 134 S. Ct. at 1245. Upon considering the background principles of aiding and abetting law, under which a person "possessing the requisite intent" is guilty of aiding and abetting so long as he "facilitate[s] any part — even though not every part — of a criminal venture," the Court found that a defendant may be held criminally liable for aiding and abetting a § 924(c) offense if he "facilitat[es] either the [underlying violent or drug trafficking offense] or the firearm use (or of course both)." 134 S. Ct. at 1246-47. In addition, the Government must establish an intent that "go[es] to the specific and entire crime charged — so here, to the full scope (predicate crime plus gun use) of § 924(c)." 134 S. Ct. at 1248.

The Court then elaborated at length on the showing of intent that must be made in order to convict a defendant of aiding and abetting a § 924(c) offense:

> . . . An active participant in a drug transaction [or crime of violence] has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun. In such a case, the accomplice has decided to join in the criminal venture, and share in its benefits, with full awareness of its scope — that the plan calls not just for a drug sale [or crime of violence], but for an armed one. In so doing, he has chosen . . . to

4

align himself with the illegal scheme in its entirety — including its use of a firearm. And he has determined . . . to do what he can to make that scheme succeed. He thus becomes responsible, in the typical way of aiders and abettors, for the conduct of others. He may not have brought the gun to the drug deal [or crime of violence] himself, but because he took part in that deal knowing a confederate would do so, he intended the commission of a § 924(c) offense — *i.e.,* an armed drug sale [or crime of violence].

       For all that to be true, though, the § 924(c) defendant's knowledge of a firearm must be advance knowledge — or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice. When an accomplice knows beforehand of a confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an *armed* offense. But when an accomplice knows nothing of a gun until it appears at the scene, he may already have completed his acts of assistance; or even if not, he may at that late point have no realistic opportunity to quit the crime. And when that is so, the defendant has not shown the requisite intent to assist a crime involving a gun. As even the Government concedes, an unarmed accomplice cannot aid and abet a § 924(c) violation unless he has foreknowledge that his confederate will commit the offense with a firearm. For the reasons just given, we think that means knowledge at a time the accomplice can do something with it — most notably, opt to walk away.

      . . . . Rosemond argues that a participant in a drug deal [or crime of violence] intends to assist a § 924(c) violation only if he affirmatively desires one of his confederates to use a gun. The jury, Rosemond concedes, could infer that state of mind from the defendant's advance knowledge that the plan included a firearm. But according to Rosemond, the instructions must also permit the jury to draw the opposite conclusion — that although the defendant participated in a drug deal [or crime of violence] knowing a gun would be involved, he did not specifically want its carriage or use. That higher standard, Rosemond claims, is necessary to avoid subjecting persons of different culpability to the same punishment. Rosemond offers as an example an unarmed driver assisting in the heist of a store: If that person spent the drive trying to persuade his confederate to leave the gun behind, then he should be convicted of abetting shoplifting, but not armed robbery.

> We think not. What matters for purposes of gauging intent, and so what jury instructions should convey, is that the defendant has chosen, with full knowledge, to participate in the illegal scheme — not that, if all had been left to him, he would have planned the identical crime. Consider a variant of Rosemond's example: The driver of a getaway car wants to help rob a convenience store (and argues passionately for that plan), but eventually accedes when his confederates decide instead to hold up a national bank. Whatever his original misgivings, he has the requisite intent to aid and abet *bank* robbery; after all, he put aside those doubts and knowingly took part in that more dangerous crime. The same is true of an accomplice who knowingly joins in an armed drug transaction [or crime of violence] — regardless whether he was formerly indifferent or even resistant to using firearms. The law does not, nor should it, care whether he participates with a happy heart or a sense of foreboding. Either way, he has the same culpability, because either way he has knowingly elected to aid in the commission of a peculiarly risk form of offense.
>
> A final, metaphorical way of making the point: By virtue of § 924(c), using a firearm at a drug deal [or a violent crime] ups the ante. A would-be accomplice might decide to play at those perilous stakes. Or he might grasp that the better course is to fold his hand. What he should not expect is the capacity to hedge his bets, joining in a dangerous criminal scheme but evading its penalties by leaving use of the gun to someone else. Aiding and abetting law prevents that outcome, so long as the player knew the heightened stakes when he decided to stay in the game.

134 S. Ct. at 1249-50 (internal quotation marks, alterations, citations, and footnote omitted).

**B.   Applying *Rosemond* to the Plea Colloquy in This Case**

In his present motion, Defendant contends that the colloquy at his March 30, 2011 plea hearing[1] fails to establish his "advance knowledge," as demanded under *Rosemond,*

---

[1]The plea colloquies for the § 924(c) charges at issue in the present motion — counts 2, 6, 8, and 10 of the first superseding indictment — are set forth in full in Defendant's brief in support of his motion, (*see* Defendant's Motion, Br. in Support at 5-10), and need not be reproduced in their entirety here. Rather, the Court quotes from portions of these colloquies as

that one or more of his accomplices were carrying guns as he and his co-defendants traveled to the robberies charged in counts 1, 5, 7, and 9 of the first superseding indictment.[2] In particular, Defendant maintains that this colloquy does not meet the intent standard articulated in *Rosemond* because it fails to establish "when or how" Defendant knew about the guns brought by his accomplices to the robberies, (*see* Defendant's Motion, Br. in Support at 6-10), and thus cannot demonstrate Defendant's advance knowledge of these guns at a point when he reasonably could have walked away from these armed robbery ventures.

    Yet, while it is true that Defendant's acknowledgments at the plea hearing fall short of establishing ***precisely*** when or how he learned that one or more of his accomplices were armed with guns as they traveled to the locations of the four robberies, the Court nonetheless is satisfied that the plea colloquies establish Defendant's "foreknowledge" of this fact within the meaning of *Rosemond*. As to count 2, for example, Defendant admitted (i) that he drove one of the two cars that traveled to a Radio Shack store in Eastpointe, (ii) that it was his job to remain in the car while others went

---

pertinent to the Court's analysis of the particular arguments advanced in Defendant's motion.

    [2]As noted by Defendant, the indictment does not charge him (or any of his co-defendants) with aiding and abetting a § 924(c) offense, but instead charges him as a principal. By the time Defendant entered into his plea agreement, however, the Government had elected to proceed under an aiding and abetting theory as to the § 924(c) offenses charged in counts 2, 6, 8, and 10 of the first superseding indictment, presumably due to a lack of evidence that Defendant himself had carried a firearm to any of the robberies charged in counts 1, 5, 7, and 9 of the indictment. Thus, both Defendant's plea agreement and the colloquy at his March 30, 2011 plea hearing reflect an aiding and abetting theory of guilt as to the § 924(c) offenses charged in the indictment.

inside the store, (iii) that he "understood that when those other people who were with [him] were going into the Radio Shack, they were going to rob that place," (iv) that he "knew that they were armed with handguns" and that, based on his "prior association with some of those people, these were real guns," and (v) that he "knew the guns they were taking into the Radio Shack Store were going to be used to assist them in the taking of some product from that store." (3/30/2011 Plea Hearing Tr. at 53-54.)

Viewed in their totality, these admissions demonstrate Defendant's advance knowledge that the venture he had joined was an armed robbery. As a threshold matter, because Defendant did not accompany his confederates into the Radio Shack store, his admitted knowledge that they were armed could only have been gained at some point *before* these other individuals entered the store or *after* they had completed their activities inside the store; this is not a case where, for instance, "an accomplice knows nothing of a gun until it appears at the scene." *Rosemond,* 134 S. Ct. at 1249. Yet, the plea colloquy precludes any claim that Defendant first learned of the presence and use of guns *after* his accomplices exited the store. Defendant admitted, after all, that he "knew the guns they *were taking into* the Radio Shack Store were *going to be used*" to assist in the robbery of the store. (3/30/2011 Plea Hearing Tr. at 54 (emphasis added).) Surely, Defendant could not have known how guns were "going to be used" during the robbery unless he knew that guns had been *brought* to the robbery. This admission, then, defeats the notion that Defendant's colleagues informed him only after the fact that they had

brought guns to the store and had used them in furtherance of their criminal venture, and instead establishes that Defendant learned of these weapons at some point before his accomplices entered the store.[3]  As the Government correctly observes, "[e]ven if [Defendant] didn't know about the guns until sometime during the[] drive to the place[] to be robbed, since he remained outside and waited for the robbery to be completed, he plainly had an opportunity to 'quit'" before he concluded his role in each offense by driving his confederates away from the scene. (Gov't Response Br. at 4.)

The plea colloquies as to the remaining counts at issue — counts 6, 8, and 10 — all feature similar admissions of foreknowledge. As to count 6, Defendant admitted his knowledge that "when [his confederates] *were going into the store they were armed with handguns,*" and that "they *were going to use those guns to help them or assist them*" in their robbery of the store.  (3/30/2011 Plea Hearing Tr. at 56-57 (emphasis added).)  As to count 8, Defendant admitted his knowledge "that *at the time that the people who were with* [him] *went into the T-Mobile Store, they had handguns with them*," and that "they *were going to use those guns in the commission of that robbery."* (*Id.* at 58-59 (emphasis added).)  Finally, as to count 10, Defendant admitted his knowledge that "*when* [his confederates] *went into the T-Mobile Store* on Grand River *that they were*

---

[3]In addition, Defendant admitted that he knew the guns possessed by his accomplices were real because of his "prior association with some of those people," (*id.*), and not because he saw the guns themselves at some point in the midst of the criminal venture and could tell that they were real, or because he was told after the fact that real guns had been used. This further demonstrates Defendant's knowledge of the guns before his companions entered the store.

*armed with handguns,"* and that "*[t]hey were going to go inside, brandish those guns, show the employees to give them*" the merchandise taken from this store. (*Id.* at 60-61 (emphasis added).) Again, each of these admissions demonstrates Defendant's advance knowledge that his confederates planned to use their guns to facilitate the robberies, and each, therefore, is flatly inconsistent with Defendant's claim that he "could have learned of the guns after his co-defendants returned to the car." (Defendant's Reply Br. at 3.)[4]

Contrary to Defendant's contention, the showing of foreknowledge here does not rest upon "inferences" that a trier of fact could draw, but that cannot properly be drawn in the present context of a guilty plea. As explained, Defendant's admissions at the plea hearing are simply not compatible with the notion that he first learned of his cohorts' possession and use of guns only upon their return to the car after the robberies of the four establishments; one would not admit to knowledge that others were armed with handguns "when they were going into the store" or "at the time [they] went into" the store if he first learned of the existence of these weapons *after* these other individuals left the store. Likewise, as to Defendant's suggestion that he "could have learned of the guns as they were pulled by [his] codefendants as they entered" the stores, (Defendant's Reply Br. at 3), this is belied by Defendant's admitted knowledge that his companions were going to

---

[4]Moreover, after the first of the robberies charged in the indictment — the February 22, 2010 robbery charged in count 9, with the corresponding § 924(c) offense charged in count 10 — the Government correctly observes that no matter when Defendant might have learned of the guns used in this initial robbery offense, this awareness surely served as "advance knowledge of the likely presence of firearms in every robbery thereafter." (Gov't Response Br. at 4.)

10

use those guns to facilitate their robberies of the stores. As discussed, some advance knowledge of the presence of guns is necessary in order to claim awareness of what one's colleagues plan to ***do*** with those guns in the course of their criminal venture. Consequently, the Court is satisfied that the showing of intent required under *Rosemond* to find a defendant guilty of aiding and abetting a § 924(c) offense has been made in this case by virtue of Defendant's admissions at his plea hearing.

### III. <u>CONCLUSION</u>

For the reasons stated at the April 23, 2014 hearing, as supplemented by the rulings set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant Tevin Bivins's March 21, 2014 motion to vacate pleas on counts 2, 6, 8 and 10 (docket #196) is DENIED.

s/Gerald E. Rosen<br>
Chief Judge, United States District Court

Dated: April 30, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 30, 2014, by electronic and/or ordinary mail.

s/Julie Owens<br>
Case Manager, (313) 234-5135